UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

DOMONIC RONALDO MALONE,

    Petitioner,

v.

BRIAN WILLIAMS, *et al.*,

    Respondents.

Case No. 2:18-cv-01146-RFB-NJK

**ORDER**

## I.    INTRODUCTION

Nevada prisoner Domonic Ronaldo Malone ("Petitioner" or "Malone") now brings the instant Habeas Corpus action by his appointed counsel. The respondents have filed an answer, responding to the remaining claims in Malone's amended habeas petition, Malone has filed a reply, and the case is before the Court for resolution on the merits of Malone's claims. The Court will grant Malone habeas corpus relief on his claim that his federal constitutional right to represent himself at trial was violated. The Court will deny Malone relief, and deny him a certificate of appealability, with respect to his other claims.

## II.    BACKGROUND

Malone was convicted of kidnapping and murdering Victoria Magee and Charlotte Combado. Malone was sentenced to four consecutive sentences of life in prison without the possibility of parole for the murders, and additional prison terms for the other crimes. See Judgment of Conviction, Exh. 365 (ECF No. 29-54).

Malone appealed, and the Nevada Supreme Court affirmed the judgment of conviction on December 18, 2013. See Order of Affirmance, Exh. 385 (ECF No. 30-15).

Malone filed a pro se petition for writ of habeas corpus in state court on August 13, 2014. See Petition for Writ of Habeas Corpus, Exh. 390 (ECF Nos. 30-20, 30-21, 30-22, 30-23, 30-24);

Amended Supplemental Petition for Writ of Habeas Corpus, Exh. 415 (ECF Nos. 30-49, 30-50); Supplemental Memorandum of Points and Authorities, Exh. 429 (ECF No. 30-64). The state district court denied Malone's petition. See Findings of Fact, Conclusions of Law and Order, Exh. 437 (ECF No. 30-72). Malone appealed, and the Nevada Supreme Court affirmed the denial of Malone's petition on February 15, 2018. See Order of Affirmance, Exh. 474 (ECF No. 31-35).

This Court received a pro se petition for writ of habeas corpus from Malone, initiating this action, on June 25, 2018. See Petition for Writ of Habeas Corpus (ECF No. 1-1). The Court granted Malone's motion for appointment of counsel, and appointed counsel to represent him. See Order entered July 16, 2018 (ECF No. 4); Order entered August 31, 2018, (ECF No. 7). With counsel, Malone filed an amended petition on January 29, 2019. (ECF No. 11).

In his amended petition—his operative petition—Malone asserts the following grounds for relief:

> 1.    Malone's federal constitutional rights were violated "when he was forced to accept the Special Public Defender's Office as his lawyers."
>
> 2.    Malone's federal constitutional rights were violated as a result of ineffective assistance of his trial counsel, because of trial counsel's "failure to challenge prospective juror #484."
>
> 3.    Malone's federal constitutional rights were violated as a result of ineffective assistance of his trial counsel, because of trial counsel's failure "to investigate the incomplete cellphone records or hire an expert to reconstruct them."
>
> 4A.   Malone's federal constitutional rights were violated because the prosecutor, in closing argument, committed prosecutorial misconduct by referring "to a dumped out purse as evidence of a 'struggle' during the alleged kidnapping."
>
> 4B.   Malone's federal constitutional rights were violated as a result of ineffective assistance of his trial counsel, because of trial counsel's failure to object to the State's improper commentary during closing arguments.
>
> 5.    Malone's federal constitutional rights were violated as a result of improper jury instructions.
>
> 6.    Malone's federal constitutional rights were violated because his first-degree kidnapping conviction was not supported by sufficient evidence.
>
> 7.    Malone's federal constitutional rights were violated because the trial court allowed the testimony of an accomplice and improperly instructed the jury about how to weigh the accomplice testimony.

8A.     Malone's federal constitutional rights were violated as a result of ineffective assistance of his trial counsel, because of the cumulative effect of trial counsel's errors.

8B.     Malone's federal constitutional rights were violated as a result of ineffective assistance of his appellate counsel.

Amended Petition for Writ of Habeas Corpus (ECF No. 11).

Respondents filed a motion to dismiss on September 9, 2019 (ECF No. 22), arguing that various of Malone's claims are barred by the statute of limitations, are partly or wholly unexhausted in state court; and/or are partly or wholly procedurally defaulted. On July 13, 2020, the Court granted that motion in part and denied it in part; the Court dismissed the claim in Ground 2. See Order entered July 13, 2020 (ECF No. 40). The Court deferred ruling on the question of the possible procedural default of Grounds 4A, 5 (in part), 6 and 7 until consideration of the merits of Malone's remaining claims. See id.

Respondents filed an answer (ECF No. 51), responding to Malone's remaining claims on May 28, 2021. Malone filed a reply on September 23, 2021 (ECF No. 54).

## III.     DISCUSSION

### A.     Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a federal court may not grant a petition for a writ of habeas corpus on any claim that was adjudicated on its merits in state court unless the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law as determined by United States Supreme Court precedent, or was based on an unreasonable determination of the facts in light of the evidence presented in the state-court proceeding. See 28 U.S.C. § 2254(d). A state-court ruling is "contrary to" clearly established federal law if it either applies a rule that contradicts governing Supreme Court law or reaches a result that differs from the result the Supreme Court reached on "materially indistinguishable" facts. See Early v. Packer, 537 U.S. 3, 8 (2002) (per curiam). A state-court ruling is "an unreasonable application" of clearly established federal law if it correctly identifies the governing legal rule but unreasonably applies the rule to the facts of the case. See Williams v. Taylor, 529 U.S. 362, 407–08 (2000). To obtain federal habeas relief for such an "unreasonable application," however, a petitioner must show that the state court's application of Supreme Court

precedent was "objectively unreasonable." Id. at 409–10; see also Wiggins v. Smith, 539 U.S. 510, 520–21 (2003). Or, in other words, habeas relief is warranted, under the "unreasonable application" clause of section 2254(d)(1), only if the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington v. Richter, 562 U.S. 86, 103 (2011).

### B.      Procedural Default

In Coleman v. Thompson, the Supreme Court held that a state prisoner who fails to comply with the state's procedural requirements in presenting his claims is barred by the adequate and independent state ground doctrine from obtaining a writ of habeas corpus in federal court. Coleman v. Thompson, 501 U.S. 722, 731–32 (1991) ("Just as in those cases in which a state prisoner fails to exhaust state remedies, a habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance."). Where such a procedural default constitutes an adequate and independent state ground for denial of habeas corpus, the default may be excused only if "a constitutional violation has probably resulted in the conviction of one who is actually innocent," or if the prisoner demonstrates cause for the default and prejudice resulting from it. Murray v. Carrier, 477 U.S. 478, 496 (1986).

To demonstrate cause for a procedural default, the petitioner must "show that some objective factor external to the defense impeded" his efforts to comply with the state procedural rule. Murray, 477 U.S. at 488. For cause to exist, the external impediment must have prevented the petitioner from raising the claim. See McCleskey v. Zant, 499 U.S. 467, 497 (1991). With respect to prejudice, the petitioner bears "the burden of showing not merely that the errors [complained of] constituted a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire [proceeding] with errors of constitutional dimension." White v. Lewis, 874 F.2d 599, 603 (9th Cir. 1989), citing United States v. Frady, 456 U.S. 152, 170 (1982).

### C.      Ineffective Assistance of Counsel

4

In <u>Strickland v. Washington</u>, the Supreme Court propounded a two-prong test for analysis of claims of ineffective assistance of counsel, requiring the petitioner to demonstrate (1) that the attorney's "representation fell below an objective standard of reasonableness," and (2) that the attorney's deficient performance prejudiced the defendant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Strickland v. Washington</u>, 466 U.S. 668, 688, 694 (1984). A court considering a claim of ineffective assistance of counsel must apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." <u>Id</u>. at 689. The petitioner's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." <u>Id</u>. at 687. To establish prejudice under <u>Strickland</u>, it is not enough for the habeas petitioner "to show that the errors had some conceivable effect on the outcome of the proceeding." <u>Id</u>. at 693. Rather, the errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." <u>Id</u>. at 687.

Where a state court previously adjudicated the claim of ineffective assistance of counsel under <u>Strickland</u>, establishing that the decision was unreasonable is especially difficult. <u>See</u> <u>Harrington</u>, 562 U.S. at 104–05. In <u>Harrington</u>, the Supreme Court instructed that <u>Strickland</u> and section 2254(d) are each highly deferential, and when the two apply in tandem, review is doubly so. <u>Id</u>. at 105; <u>see also</u> <u>Cheney v. Washington</u>, 614 F.3d 987, 995 (9th Cir. 2010) ("When a federal court reviews a state court's *Strickland* determination under AEDPA, both AEDPA and *Strickland*'s deferential standards apply; hence, the Supreme Court's description of the standard as doubly deferential." (internal quotation marks omitted)). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." <u>Harrington</u>, 562 U.S. at 105.

### D.     Ground 1

In Ground 1, Malone claims that his federal constitutional rights were violated "when he was forced to accept the Special Public Defender's Office as his lawyers." Amended Petition for Writ of Habeas Corpus (ECF No. 11), pp. 19–32. The trial court initially appointed the Clark County Special Public Defender's Office ("SPD") to represent Malone, but then, after requests by

Malone to dismiss appointed counsel, discharged the SPD from representation of Malone and appointed it as standby counsel, with Malone representing himself; subsequently, still before trial, the trial court revoked Malone's self-representation and re-appointed the SPD as Malone's counsel, and the SPD proceeded to represent Malone at trial. *See id.* Malone's claim is that his federal constitutional rights were violated when the court revoked his self-representation re-appointed the SPD to represent him.

Malone asserted this claim on his direct appeal, and the Nevada Supreme Court ruled as follows:

> We review a district court's decision of whether to revoke a defendant's right of self-representation for an abuse of discretion. See Vanisi v. State, 117 Nev. 330, 340–41, 22 P.3d 1164, 1171 (2001). Further, we review a district court's finding that a defendant's waiver is equivocal for clear error as it is a finding of fact. United States v. Mendez-Sanchez, 563 F.3d 935, 944 (9th Cir. 2009).
>
> The district court conducted an extensive *Faretta* hearing and determined that Malone knowingly and voluntarily waived his right to counsel. This determination is not an issue on appeal. However, after the district court granted Malone's motion to represent himself, Malone repeatedly failed to follow procedural rules. Each time Malone appeared in court, the district court repeatedly admonished him about self-representation by explaining the difficulties of self-representation, especially while in custody, and inquired whether he still wanted to represent himself.
>
> At one hearing, Malone indicated that he wanted counsel appointed. However, after a discussion with the district court, he decided to continue representing himself. Malone also wrote a memorandum to the district court stating that (1) he had "been forced to represent himself," (2) he "did not want to represent himself," (3) the district court refused to help him, and (4) he had "always been more than willing to accept proper assistance ... however this Court has not allowed him." At the hearing regarding this memorandum, the district court told Malone that it was clear from his pleadings that he "did not want to represent himself," and Malone responded affirmatively. As a result of Malone's actions and representations, the district court revoked Malone's right to represent himself.
>
> A defendant has a constitutional right to represent himself. Faretta v. California, 422 U.S. 806, 819 (1975). However, a different waiver analysis applies to the right to self-representation than to the right to counsel. Brown v. Wainwright, 665 F.2d 607, 610 (5th Cir. 1982). In order to invoke the right to self-representation, a defendant must "knowingly and intelligently" waive his right to counsel in a clear and unequivocal manner. Faretta, 422 U.S. at 835. Further, a district court may determine that a defendant who is representing himself has waived this right through his actions. McKaskle v. Wiggins, 465 U.S. 168, 183 (1984); Faretta, 422 U.S. at 834 n.46. The district court also has the discretion to deny the defendant's right to self-representation. Gallego v. State, 117 Nev. 348, 356–57, 23 P.3d 227, 233 (2001) (holding that the district court may deny the right of self-representation if the defendant is incompetent to waive the right to counsel, the request is untimely, equivocal, or made for purposes of delay, or the defendant disrupts the judicial

6

process), abrogated on other grounds by Nunnery v. State, 127 Nev. [749], [775] n.12, 263 P.3d 235, 253 n.12 (2011).

A defendant waives the right to self-representation through vacillating positions. United States v. Bennett, 539 F.2d 45, 51 (10th Cir. 1976) (finding that the defendant waived the right to represent himself when he changed his mind about representing himself multiple times); People v. Marshall, 931 P.2d 262, 275 (Cal. 1997) (finding that the defendant's conduct and statements were equivocal and made for the purpose of delay). Some courts favor representation by counsel as opposed to self-representation when a defendant's actions and statements are ambiguous. United States v. Frazier-El, 204 F.3d 553, 559 (4th Cir. 2000) (stating that when a defendant appears to be manipulating a court with ambiguous and vacillating statements, a court "must ascribe a constitutional primacy to the right to counsel because this right serves both the individual and collective good, as opposed to only the individual interests served by protecting the right of self-representation" (internal quotation marks omitted)).

[Footnote: Malone argues that the district court erred in revoking his right to self-representation based on the complexity of the case. We have previously held that the complexity of a case is a relevant factor when determining whether the defendant knowingly and voluntarily waived his right to counsel, but "is not an independent basis for denial of a motion for self-representation." Vanisi, 117 Nev. at 341, 22 P.3d at 1171–72. We conclude that while the district court should not have considered the complexity of the case in revoking Malone's right to self-representation, sufficient other grounds existed to support the district court's decision.]

We conclude that the district court's decision to revoke Malone's right to self-representation was not an abuse of discretion. The district court's finding that Malone's actions were equivocal and appeared to be made for the purposes of delay was not clear error. Malone went back and forth several times when deciding whether he wanted to represent himself, and even accused the district court of forcing him into representing himself. Malone also stated in his memorandum that he wanted proper assistance of counsel. After further canvassing from the district court, Malone confirmed that he did not want to represent himself. Therefore, we conclude that the district court's decision to revoke Malone's right of self-representation was within its discretion.

Order of Affirmance, Exh. 385, pp. 2–4 (ECF No. 30-15, pp. 3–5).

A criminal defendant has a right under the Sixth and Fourteenth Amendments to represent himself at trial. Faretta v. California, 422 U.S. 806, 832 (1975). The right to self-representation, however, is not absolute. Martinez v. Court of Appeal of California, 528 U.S. 152, 161 (2000). "A defendant may not invoke the Faretta right if the Faretta demand is untimely, equivocal, made for the purpose of delay, or is not knowingly and intelligently made." Sandoval v. Calderon, 241 F.3d 765, 774 (9th Cir. 2000). Moreover, a criminal defendant who waives his right to counsel must be "able and willing to abide by rules of procedure and courtroom protocol." McKaskle v. Wiggins, 465 U.S. 168, 173 (1984).

The trial court appointed the SPD to represent Malone in 2006, but by October 2007 Malone was asking the court to appoint other counsel for him. See Motion for Defendant's Motion to Appoint New Counsel, Exh. 136 (ECF No. 25-15). Malone's request was the subject of a hearing on October 30, 2007; at that hearing, Malone withdrew his request. See Transcript, October 30, 2007, Exh. 138 (ECF No. 25-17).

On January 7, 2009, Malone filed a motion requesting dismissal of his counsel. See Motion to Dismiss Counsel, Exh. 159 (ECF No. 25-41). The court held a hearing regarding that motion. Transcript, January 20, 2009, Exh. 161 (ECF No. 25-43). At the hearing, Malone stated that he was making his request because he believed that his counsel had not provided him with all materials obtained in discovery, and because he believed his counsel had failed to raise certain issues. See id. The court found no cause to dismiss Malone's counsel and denied the motion. See id. On February 5, 2009, following a hearing on an unrelated matter, Malone and his counsel informed the court that they had resolved their disputes. See Transcript, February 5, 2009, Exh. 165, pp. 5–10 (ECF No. 25-47, pp. 6–11).

On December 3, 2009, Malone filed a motion requesting either a speedy trial or discharge of his counsel. See Motion for Trial (Speedy) or in the Alternative, Motion to Withdraw Counsel, Exh. 225 (ECF No. 26-35). Malone alleged in that motion that he was wrongly advised regarding his right to a speedy trial, that he had yet to receive all the discovery, and that one of his attorneys made racist remarks. Id. At an initial hearing regarding the motion, the court asked Malone if he intended to hire his own attorney, and Malone answered:

> No. Your Honor, [I would] rather represent myself [than] to be represented by the ones I'm currently represented by. If that's what I have to do, that's what I'm going to do.

Transcript, December 15, 2009, Exh. 226, p. 3 (ECF No. 26-36, p. 4). The court set a further hearing for a *Faretta* canvass. Id. at 5–6 (ECF No. 26-36, pp. 6–7). At that further hearing, on January 8, 2010, the court canvassed Malone and found that he was knowingly and voluntarily waiving his right to counsel. See Transcript, January 8, 2010, Exh. 227 (ECF No. 26-37). During the hearing the following exchange occurred:

> THE COURT: Do you understand, sir, that you can't pick and choose your attorneys? You can't say well I like one of the attorneys sitting at the desk and so appoint me another attorney; do you understand that?
>
> THE DEFENDANT: Yes, sir.

Id. at 2 (ECF No. 26-37, p. 3). The following exchange also occurred:

> THE COURT: And after everything you've been advised of this morning, sir, you still wish to represent yourself?
>
> THE DEFENDANT: Yes, sir. I feel as though I have no choice, sir.
>
> THE COURT: And it's your decision this morning voluntary on your part to represent yourself?
>
> THE DEFENDANT: Well, as I sit up in this courtroom, sir, yes I try many times to get other attorneys, but I was denied. I was unsuccessful in getting those. So, therefore, the only option that I have is this. I can't say that if I put a gun to my head anything like that 'cause nobody had done that, but I feel that this is the only option I have. So, yes, sir, I have to take it. I feel as I'm compelled to take it, sir.

Id. at 23 (ECF No. 26-37, p. 24) (as in original). The judge indicated that he would discharge the SPD from their representation of Malone, but would re-appoint the SPD as standby counsel, and Malone then stated:

> See, and that's what I was trying not to do because I figured that as much as a standby counsel would be one counsel is the one I was trying to remove.

Id. at 26 (ECF No. 26-37, p. 27) (as in original). The court discharged the SPD from their representation of Malone and re-appointed the SPD as stand-by counsel. Malone then proceeded pro se.

About a year later, on January 8, 2011, Malone filed a motion requesting that the SPD be discharged as his stand-by counsel. See Motion to Dismiss Stand-By Counsel, Exh. 288 (ECF No. 27-32). The court held a hearing on that motion on January 25, 2011. See Transcript, January 25, 2011, Exh. 289 (ECF No. 27-33). At the hearing, Malone stated that he wished to dismiss his standby counsel because they would not assert a particular issue for him. Id. at 3–4 (ECF No. 27-33, pp. 4–5). The following exchange then occurred:

> THE COURT: Sir, you have stand-by counsel, why don't you file the motion yourself? They're not—they're not sort of standing by in case you have any questions.
>
> THE DEFENDANT: Yes, I understand that, sir. And during my Faretta hearing I had asked for, you know what I'm saying, counsel and stuff like that. You

said that you would apply them as stand-by counsel after I stated to the Court that the conflict is with the current stand-by counsel. So in essence, if this case was to get to the point where I need not no longer represent myself, you still give the counsels in which I had contained conflict with which is under the constitution which is that you provided—you denied me the right to have representation even though you have in presence stand-by counsel which is from the Special Public Defender's Office whom I have a conflict with has not provided me with representation at all, not even on a stand-by level.

Id. at 4 (ECF No. 27-33, p. 5) (as in original). The following exchange also occurred:

THE COURT: All right, sir, it sounds like your attorneys, Mr. Pike and Mr. Cano, have thoroughly reviewed your legal issues and they're not required to file any frivolous motions or [cite] any case law that does not apply to the argument you—that you wanted them to make in the past.

You are now, as you know, your own attorney. You can file any motion [for] reconsideration whether I grant them or not, but you are free to file the appropriate motions.

And, sir, your motion to dismiss counsel that I have here and also for transcripts, do not have any points and authorities attached to the motion. Therefore, they're improper. I advised you last time that if you—if you did not follow the rules as you're supposed to that could be grounds for me to no longer allow you to represent yourself. You break the rules again, I'm going to determine that you cannot follow the rules and therefore you'll have these [gentlemen] who will represent you as opposed to stand-by; do you understand that, sir?

THE DEFENDANT: Yeah.

THE COURT: Okay.

THE DEFENDANT: So you're telling me today you're denying me the right to have representation?

THE COURT: Sir, you heard [my] decision. All the legal claims that you've brought up were—were reviewed and evaluated by two very seasoned attorneys. I'm denying your motion.

Id. at 7–8 (ECF No. 27-33, pp. 8–9).

About five months after that, on June 29, 2011, Malone filed a document entitled "Ex Parte Communication (Defendant Memorandum to Court)." Exh. 295 (ECF No. 27-39). In that filing, Malone again expressed dissatisfaction with the SPD acting as his standby counsel. See id. He stated that he felt he still had not received certain exculpatory evidence, and he stated:

Had not the defendant been forced to represent himself in this case this matter would have been swept under the rug until it was [too] late for the defendant to do anything about it.

Id. at 2 (ECF No. 27-39, p. 3) (as in original). Malone also stated:

10

> The Defendant did not want to represent himself he has motion this Court for help only to be denied by this Court on numerous occasion. Which created the forced situation.

Id. at 2 (ECF No. 27-39, p. 3) (as in original). And, he stated:

> The Defendant has always been more than willing to accept proper assistance in order to regain his freedom however this Court has not allowed him to pursue this goal. Which is a right given to all American citizens.

Id. (as in original). He also stated:

> Maybe in hopes that by overwhelming the Defendant he would somehow see the light and allow Mr. Cano & Mr. Pick [SPD attorneys] to lead him like cattle to his slaughter. By handing over the case back to the Special Public Defender Office.
>
> The Defendant will do no such thing he is more than ready and willing to fight to the point of death for the rights giving on to him by his beloved country when the 14th Amendment was added to the United States Constitution. The rights of which this Court and representive of the United States is willfully and unlawfully denying him.

Id. at 2–3 (ECF No. 27-39, pp. 3–4) (as in original).

On July 19, 2011, the court held a hearing regarding Malone's June 29, 2011, filing. Transcript, July 19, 2011, Exh. 299 (ECF No. 27-44). After confirming that Malone had written the document filed on July 19, 2011, and after Malone stated that everything in that document was true and correct, the judge stated:

> All right. The—as all parties know, we went through a *Faretta* Canvassing, a very thorough canvass in this matter.
>
> Mr. Malone has just advised the Court that he was forced to represent [himself] in this case. I'm quoting from his pleading. It said, had not the Defendant been forced to represent [himself] in this case, this matter would have been swept under the rug. Another section in his pleading he states the Defendant did not want to represent himself. So he has motion this Court for help only to be denied by this Court on numerous occasions which I think it says exhorted—exerted the forced situation. And so Mr. Malone has advised me that everything contained in this pleading is correct.
>
> Sir, if you feel you have been forced to represent yourself and there's—and that you did not want to represent yourself, your request to represent yourself is now vacated or is denied. Also, the Court looks at the—the various cases that state that when a case is overly complex, this Court can also deny someone his right to represent himself; that's Lyons v. State.
>
> And for Defendant's request or Defendant advising the Court that he was forced and he did not want to represent himself, therefore, his status no longer

exists. The Special Public Defender's Office is ordered to represent him no longer as stand-by counsel.

Id. at 3 (ECF No. 27-44, p. 4). The following exchange then occurred:

> THE DEFENDANT: Sir, the memorandum that I filed with this Court was saying that you was forcing the Special Public Defender's Office on me, Your Honor. That's what --
>
> THE COURT: That's not what it said.
>
> THE DEFENDANT: -- that's what I was saying when I said forced—the attorneys forced me to represent myself 'cause I'm only represented by the stand-by counsel which was created a issue at first; that's the reason why I had wrote the memorandum, sir.
>
> THE COURT: Sir, your pleading[']s very clear. The Defendant did not want to represent himself in this matter.
>
> THE DEFENDANT: Yes. Yes, sir.
>
> THE COURT: Okay. Your wish is granted, sir.
>
> THE DEFENDANT: Sir --
>
> THE COURT: Mr. Pike and Mr. Cano [SPD attorneys] will represent you. We're done.

Id. at 4–5 (ECF No. 27-44, pp. 5–6) ) (as in original). Later in the hearing, the judge stated:

> … [A]s I previously stated this is a very—after further review by the Court it's—I have so many cases that this is a very complex matter and—so that's why the Defendant is going to be represented by Special PD's Office, but more so by his statement that he was forced into this and the Court's not going to force him into this.

Id. at 5–6 (ECF No. 27-44, pp. 6–7). The court revoked Malone's self-representation and re-appointed the SPD as his counsel. Id.

Less than a month later, Malone requested that the SPD withdraw from representation of him, and a hearing was held regarding that request. See Transcript, August 9, 2011, Exh. 301 (ECF No. 27-46). Malone stated at that hearing that he felt that the SPD attorneys were "trying to help the State murder" him, and that he could not "get around" that belief. See id. at 2 (ECF No. 27-46, p. 3). The court denied Malone's motion, and added the following:

> THE COURT: … And, sir, I think you've been playing games because I gave you the Faretta Canvassing. You were absolutely clear what you wanted to do.
>
> THE DEFENDANT: Yes, sir.

> THE COURT: Then a couple of months ago I get a letter from you saying you never wanted to do it and you were forced which again is utterly ridiculous because I personally gave credit and I painstakingly went over every question and then a couple of months—and some months ago, you play this game saying oh, I didn't really want to do this. Someone forced me to do this. And that's just ridiculous.

Id. at 8 (ECF No. 27-46, p. 9).

The Nevada Supreme Court based its ruling, affirming the denial of relief on this claim, primarily on its determination that Malone's actions were equivocal with respect to whether he wished to represent himself. See Order of Affirmance, Exh. 385, pp. 3–4 (ECF No. 30-15, pp. 4–5).

The Nevada Supreme mentioned in passing that the state district court based its revocation of Malone's self-representation in part on his failure to follow procedural rules and his acting to delay the proceedings. See Order of Affirmance, Exh. 385, pp. 3–4 (ECF No. 30-15, pp. 4–5). However, neither the state district court nor the Nevada Supreme Court provided any reference to the record or analysis to support either of these grounds for revocation of Malone's self-representation. And, in this case, Respondents make no serious argument, and provide no citation to the record or analysis, supporting these grounds for the Nevada Supreme Court's ruling. The record does not support a finding of a pattern or substantial procedural obfuscation or delay by Malone. For example, his failure to provide points and authorities in one filing to dismiss his counsel certainly would not provide a basis to revoke his right to represent himself. To the extent that the Nevada Supreme Court relied upon any failure to follow procedural rules, or intent to delay proceedings, on the part of Malone, as reason to revoke his self-representation, this Court determines that the Nevada Supreme Court's ruling was based on an unreasonable determination of the facts in light of the evidence. See 28 U.S.C. § 2254(d)(2).

Malone was not equivocal about his desire to represent himself rather than have the SPD represent him. While Malone was not articulate, the record indicates that his position—consistently—from at least December 3, 2009, when he filed the motion that resulted in his self-representation, was that he wished to have counsel other than the SPD appointed for him, but if he could not have other counsel appointed, he wished to represent himself. The record reflects that

Malone never wavered from that position after he was granted leave to represent himself. While Malone's request to represent himself was conditional in that he might have accepted different counsel, it was not equivocal because he was clear if the SPD was his only option for appointed counsel then he would represent himself.

A Faretta request is not equivocal merely because the defendant chooses self-representation rather than representation by particular counsel. See United States v. Hernandez, 203 F.3d 614, 621–23 (9th Cir. 2000), overruled on other grounds by Indiana v. Edwards, 554 U.S. 164 (2008); United States v. Allen, 153 F.3d 1037, 1041–42 (9th Cir. 1998); United States v. Robinson, 913 F.2d 712, 714 (9th Cir. 1990); Adams v. Carroll, 875 F.2d 1441, 1442–45 (9th Cir. 1989); but see Stenson v. Lambert, 504 F.3d 873, 883 (9th Cir. 2007) (defendant's expression of a clear preference for receiving new counsel over representing himself may be an "indication that the request, in light of the record as a whole, is equivocal").

In Adams, the defendant made a similarly conditioned request to represent himself. The Ninth Circuit Court of Appeals stated the issue as follows:

> Is a request to proceed without counsel unequivocal where the defendant consistently wishes to invoke the right only as an alternative to the appointment of a particular defense attorney?

875 F.2d at 1442. The court went on to rule on this issue as follows:

> Here, Adams made his preference clear from the start: He wanted to represent himself if the only alternative was representation by Carroll. Although his two self-representation requests were sandwiched around a request for counsel, this was not evidence of vacillation. To the contrary, each of these requests stemmed from one consistent position: Adams first requested to represent himself when his relationship with Carroll broke down. He later requested counsel, but with the express qualification that he did not want Carroll. When Carroll was reappointed, Adams again asked to represent himself. Throughout the period before trial, Adams repeatedly indicated his desire to represent himself if the only alternative was the appointment of Carroll. While his requests no doubt were conditional, they were not equivocal.
>
> *   *   *
>
> Adams … took one position and stuck to it: If the court would not order substitute counsel, he wished to represent himself. The sixth amendment, as interpreted in Faretta, required the trial court to honor this request. As the denial of the right to self-representation is not amenable to harmless error analysis, Wiggins, 465 U.S. at 177 n. 8, 104 S.Ct. at 950 n. 8, Adams' conviction must be reversed. We thus need not address his two other contentions.

1   Id. at 1444–45; see also Hernandez, 203 F.3d at 621–22 ("The fact that Hernandez's request may

2   have been conditional—that is, the fact that he requested to represent himself only because the

3   court was unwilling to grant his request for new counsel—is not evidence that the request was

4   equivocal.").

5          The Court finds the reasoning in Adams to be applicable and controlling here. Both the

6   trial court and the Nevada Supreme Court made much of Malone's statement in his June 29, 2011,

7   filing, that he was "forced" into representing himself. See Transcript, July 19, 2011, Exh. 299, pp.

8   3–5 (ECF No. 27-44, pp. 4–6); Order of Affirmance, Exh. 385, p. 4 (ECF No. 30-15, p 5).

9   However, in the context of the entire record, it is beyond any reasonable argument that Malone

10  meant that he felt forced to represent himself because the court denied his request for appointment

11  of counsel other than the SPD. See Allen, 153 F.3d at 1042 ("Allen's claim that he was 'forced to

12  choose between representing himself and being represented by incompetent counsel' does not

13  compel a conclusion that his waiver was equivocal and therefore invalid."); Robinson, 913 F.2d at

14  714 ("The fact that some of Robinson's statements of his preference to proceed pro se were

15  accompanied by expressions of his feeling 'forced' to do so does not render those statements

16  equivocal."). It is apparent from the record that Malone was attempting to explain this at the July

17  11, 2011, hearing when he was cut off by the judge. See Transcript, July 19, 2011, Exh. 299, pp.

18  4–5 (ECF No. 27-44, pp. 5–6).

19         This Court concludes that the Nevada Supreme Court's determination that Malone's

20  request to represent himself was equivocal was an unreasonable determination of the facts in light

21  of the evidence. See 28 U.S.C. § 2254(d)(2); Stenson, 504 F.3d at 882 (treating district court's

22  determination that defendant's Faretta request was equivocal as a question of fact to be reviewed

23  in federal habeas action under section 2254(d)(2)). The record, viewed in its entirety, does not

24  reasonably support a finding that, after he was granted leave to represent himself, Malone

25  equivocated about his decision to represent himself as opposed to being represented by the SPD.

26         This Court determines that the trial court violated Malone's rights under the Sixth and

27  Fourteenth Amendments, as interpreted in Faretta, by revoking his self-representation because of

28  his expressions that he would rather be represented by counsel other than the SPD but wished to

represent himself if other counsel was not appointed. This violation of Malone's constitutional rights is not subject to harmless error analysis. See Wiggins, 465 U.S. at 177 n.8; Adams, 875 F.2d at 1444–45. The Court will grant Malone habeas corpus relief on the claim in Ground 1 of his amended petition.

### E.    Ground 3

In Ground 3, Malone claims that his federal constitutional rights were violated as a result of ineffective assistance of his trial counsel, because of trial counsel's failure "to investigate the incomplete cellphone records or hire an expert to reconstruct them." Amended Petition for Writ of Habeas Corpus (ECF No. 11), pp. 39–47. Malone explains his claim as follows:

> As stressed within Ground 3 of the Amended [Petition], competent counsel should have done something to counter the State's manipulative usage of cell phone records to insinuate that Mr. Malone took Ms. Magee's phone and used it instead of his own while participating in her killing—leading the jury to believe Mr. Malone was present at the murders. Counsel should have investigated her phone location records and had them produced in order to show the comparative locations of Ms. Magee's phone and Mr. Malone. Counsel could have hired an expert to reconstruct the records or could have simply explained to the jury how and why the police might have failed to obtain the records of Ms. Magee's phone. ECF No. 11 at 39.

Reply (ECF No. 54), p. 12 (emphasis in original). The crux of the claim, as the Court understands it, is that the prosecution suggested that Malone used McGee's phone during the murders, and perhaps other crimes, but Malone's counsel did not investigate records that could have shown the location of Magee's phone at the time, and possibly exculpated Malone by showing he was not at the location of the crimes.

Malone asserted this claim as Ground 22 in his state habeas petition. See Petition for Writ of Habeas Corpus, Exh. 390, p. 30 (ECF No. 30-22, p. 10); see also Amended Supplemental Petition for Writ of Habeas Corpus, Exh. 415, p. 30 (ECF No. 30-49, p. 31). The state district court denied relief on the claim, ruling as follows:

> Petitioner alleges that counsel was ineffective for failing to investigate cell phone records of one of the victims, Victoria [Magee], and therefore was deficient in representation. [ECF No. 30-49, p. 31.] A defendant who contends his attorney was ineffective because he did not adequately investigate must show how a better investigation would have rendered a more favorable outcome probable. Molina v. State, 120 Nev. 185, 192, 87 P.3d 533, 538 (2004). The record demonstrates that

16

> on Days 11-13, cell phone data and evidence was introduced from an AT&T engineer who was extensively cross-examined by defense counsel. Specifically, Victoria's records were introduced at trial. [ECF No. 29-11, p. 35.] Therefore, the Court finds that Petitioner's claim is belied by the record.

Findings of Fact, Conclusions of Law and Order, Exh. 437, p. 11 (ECF No. 30-72, p. 12). On the appeal in that action, the Nevada Supreme Court affirmed the denial of relief the claim, referring to the ruling of the state district court, as follows:

> Malone also claims that trial counsel should have … (9) investigated the victim's cell phone records, (10) retained a historical cell site data reconstruction expert …. We conclude that the district court's factual findings related to these claims are supported by substantial evidence and not clearly wrong and that Malone did not show that the district court erred in denying them without conducting an evidentiary hearing.

Order of Affirmance, Exh. 474, pp. 3–4 (ECF No. 31-35, pp. 4–5).

In pointing out that data regarding Magee's phone was introduced at trial and that a prosecution witness was cross-examined about that evidence, the state district court appears to have misconstrued Malone's claim. Malone acknowledges that some data regarding Magee's phone was introduced at trial; his claim is that a certain kind of data regarding that phone, location data, should have been, but was not, obtained by defense counsel and analyzed. The state district court did not address counsel's failure to obtain location data regarding Magee's phone, and, in this respect, the state district court's reasoning was faulty.

However, the reference to the cell phone data introduced into evidence at trial was not the only basis for the state district court's ruling. The state district court also properly pointed out that "[a] defendant who contends his attorney was ineffective because he did not adequately investigate must show how a better investigation would have rendered a more favorable outcome probable." Findings of Fact, Conclusions of Law and Order, Exh. 437, p. 11 (ECF No. 30-72, p. 12), citing Molina v. State, 120 Nev. 185, 192, 87 P.3d 533, 538 (2004); see also Villafuerte v. Stewart, 111 F.3d 616, 632 (9th Cir. 1997) (ineffective assistance of counsel claim denied where petitioner presented no evidence showing what counsel would have found had he investigated further); Hendricks v. Calderon, 70 F.3d 1032, 1042 (9th Cir. 1995) ("Absent an account of what beneficial evidence investigation into any of these issues would have turned up, Hendricks cannot meet the prejudice prong of the Strickland test."). Fair minded jurists could reasonably argue that Malone's

claim fell short in this regard. See Harrington, 562 U.S. at 103. Malone did not in state court, and he does not now in federal court, produce any evidence to demonstrate what the location data for Magee's phone would have shown or substantiate his claim that the location data would have been exculpatory; in these respects, his claim is no more than bare, unsupported allegations. Consequently, Malone fails to satisfy the prejudice part of the Strickland analysis. Applying the deferential standard prescribed by the AEDPA, this Court determines that the state courts' ruling, denying relief on this claim, was not objectively unreasonable. The Court will deny habeas corpus relief on Ground 3.

F.      Grounds 4A and 4B, and the Related Part of Ground 8B

In Ground 4A, Malone claims that his federal constitutional rights were violated because the prosecutor, in closing argument, committed prosecutorial misconduct by referring "to a dumped out purse as evidence of a 'struggle' during the alleged kidnapping." Amended Petition for Writ of Habeas Corpus (ECF No. 11), pp. 48–53. In Ground 4B, Malone claims that his federal constitutional rights were violated as a result of ineffective assistance of his trial counsel, because of trial counsel's failure to object to this alleged prosecutorial misconduct. Id. at 53–58. And, in part of Ground 8B, Malone claims that his appellate counsel was ineffective for not raising the issue of this alleged prosecutorial misconduct on his direct appeal. Id. at 86.

Malone raised the claim in Ground 4A—the substantive prosecutorial misconduct claim—as Ground 5 of his state habeas petition. See Petition for Writ of Habeas Corpus, Exh. 390, p. 9 (ECF No. 30-20, p. 10); see also Amended Supplemental Petition for Writ of Habeas Corpus, Exh. 415, p. 9 (ECF No. 30-49, p. 10); Supplemental Memorandum of Points and Authorities, Exh. 429, pp. 5–7 (ECF No. 30-64, pp. 6–8). The state district court denied relief on the claim. See Findings of Fact, Conclusions of Law and Order, Exh. 437 (ECF No. 30-72). On appeal, the Nevada Supreme Court ruled the claim procedurally barred because it was not asserted on Malone's direct appeal. See Order of Affirmance, Exh. 474, p. 4 (ECF No. 31-35, p. 5). Consequently, the claim is subject to application of the procedural default doctrine. It is possible, however, that Malone could show cause and prejudice with respect to this procedural default by showing that his

appellate counsel was ineffective for failing to raise the claim on direct appeal, as he asserts in part

of Ground 8B.

With respect to the related ineffective assistance of trial counsel claim in Ground 4B, the

Nevada Supreme Court ruled as follows on the appeal in Malone's state habeas action:

> Malone . . . argues that trial counsel should have challenged the prosecutor's
> comments that a dumped-out purse was evidence of a struggle because the
> comments mischaracterized the evidence. The record shows that the State did not
> mischaracterize the evidence, as Ms. Estores testified that—when she returned to
> the apartment to find that the victims had been kidnapped and before the police
> searched the scene—she found property in disarray, including the contents of the
> victims' purses emptied onto the bed. The woman who walked the police through
> the apartment and emptied a different purse did so several days later, so that account
> therefore did not provide a basis to challenge the State's characterization of
> Estores's testimony. As the State did not commit misconduct, trial counsel was not
> ineffective in omitting a futile objection. <u>Ennis v. State</u>, 122 Nev. 694, 706, 137
> P.3d 1095, 1103 (2006); <u>see also</u> <u>Valdez v. State</u>, 124 Nev. 1172, 1188, 196 P.3d
> 465, 476–77 (2008) (discussing standard for prosecutorial misconduct); <u>Klein v.</u>
> <u>State</u>, 105 Nev. 880, 884, 784 P.2d 970, 973 (1989) (explaining that it is entirely
> proper for the prosecutor to argue the evidence presented to the jury and reasonable
> inferences that may be drawn from the evidence). The district court therefore did
> not err in denying this claim without an evidentiary hearing.

Order of Affirmance, Exh. 474, pp. 2–3 (ECF No. 31-35, pp. 3–4). The Nevada Supreme Court's

ruling was reasonable.

"Counsel are given latitude in the presentation of their closing arguments, and courts must

allow the prosecution to strike hard blows based on the evidence presented and all reasonable

inferences therefrom." <u>Ceja v. Stewart</u>, 97 F.3d 1246, 1253–54 (9th Cir. 1996) (internal quotation

marks omitted); <u>United States v. Tucker</u>, 641 F.3d 1110, 1120–21 (9th Cir. 2011). A petitioner is

entitled to habeas relief on a claim of prosecutorial misconduct only when the misconduct "so

infected the trial with unfairness as to make the resulting conviction a denial of due process."

<u>Darden v. Wainwright</u>, 477 U.S. 168, 181 (1986) (quoting <u>Donnelly v. DeChristoforo</u>, 416 U.S.

637, 643 (1974)). "[T]he touchstone of due process analysis in cases of alleged prosecutorial

misconduct is the fairness of the trial, not the culpability of the prosecutor." <u>Smith v. Phillips</u>, 455

U.S. 209, 219 (1982). To establish a due process violation, "it is not enough that the prosecutors'

remarks were undesirable or even universally condemned." <u>Darden</u>, 477 U.S. at 181 (internal

punctuation and citation omitted). "To constitute a due process violation, the prosecutorial

misconduct must be 'of sufficient significance to result in the denial of the defendant's right to a

fair trial.'" <u>Greer v. Miller</u>, 483 U.S. 756, 765 (1987) (quoting <u>United States v. Bagley</u>, 473 U.S. 667, 676 (1985) and <u>United States v. Agurs</u>, 427 U.S. 97, 108 (1976)). Prosecutorial misconduct warrants habeas corpus relief only if it "had substantial and injurious effect or influence in determining the jury's verdict." <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 637–38 (1993); <u>see also</u> <u>Wood v. Ryan</u>, 693 F.3d 1104, 1113 (9th Cir. 2012).

In context, the portion of the prosecution closing argument at issue was the following:

> Let's talk about the crime of burglary. This pertains to Room 222 at the South Cove. Judge Villani defines burglary in Instruction No. 24, "Any person who by day or night enters any house, room, apartment, or other building with the intent to commit assault and/or battery, and/or kidnapping, and/or murder is guilty of burglary."

> And we're given more insight into the crime of burglary in Instruction No. 27. The gist of the crime of burglary is the unlawful entry with criminal intent. So, we're really looking at two things when we're talking about burglary. Entry, because first and foremost, burglary is a crime of entry. But it's entry with a certain criminal intent, either to commit battery, or assault, or certain felonies after entry is made.

> Another way of asking, or answering the question of whether a burglary has occurred, is to ask yourselves, why did the individual enter the residence? Why did they go there? If it was to commit a crime, then they're probably guilty of burglary.

> But what do we know about what occurred? Recall the testimony of Sarah Matthews. She was staying in Room 217 with Trey Black. And Room 222 is just to the left of 217, which we're seeing almost in the center of the monitor. And she told us about the time that the defendant and Mr. McCarty came by, and it was the only time, and the first time, that she had met Mr. McCarty.

> And both of them came by, and they were talking to Trey, and they were looking for the girls, again talking about how the girls had owed them money and how they were angry about it. And they were heading to Apartment 222. And she recalls seeing a golf club, and she can't remember for certain which defendant was handling it at the time. But she clearly remembers a golf club.

> Why do the defendants proceed down the hall and enter Room 222? Because they're looking for the girls. We know that the girls were forcibly removed, because Sarah tells us what the girls' demeanor was like when they left the room. They were crying. They were clearly upset.

> We know that there was a struggle in Apartment 222, and we know that from the evidence found inside. There was a dumped out purse in the bedroom. More importantly, there was a single earring which we know connects the murder scene to this location. The earring matched the necklace that Christine was wearing when she was murdered. We know where those girls ended up.

> Why did they enter the room? They entered the room to forcibly remove the girls from it, so that they could take the girls from the South Cove out to the desert,

where they would eventually be beaten and murdered. And that is, ladies and gentlemen, the crime of burglary.

Trial Transcript, January 31, 2012, Exh. 343, pp. 29–31 (ECF No. 29-17, pp. 30–32).

The prosecutor plainly related the inference he asked the jury to draw to evidence presented at trial. And, the inference suggested by the prosecution, that there had been a struggle, was not unreasonable. Certainly, that argument did not render Malone's trial unfair. It was not prosecutorial misconduct. It follows that Malone's trial counsel did not perform unreasonably for not objecting to the argument, and that Malone was not prejudiced by counsel not objecting. The Nevada Supreme Court's ruling on this claim was not objectively unreasonable. This Court will deny habeas corpus relief on the claim in Ground 4B.

Turning to the claim of ineffective assistance of appellate counsel in Ground 8B, Respondents argue in their answer that Malone failed to exhaust such a claim in state court. See Answer (ECF No. 51), p. 45. The Court disagrees. Malone included a claim of ineffective assistance of appellate counsel in his pro se state habeas petition. See Petition for Writ of Habeas Corpus, Exh. 390, p. 6 (ECF No. 30-20, p. 7); Amended Supplemental Petition for Writ of Habeas Corpus, Exh. 415, p. 6 (ECF No. 30-49, p. 7).  In that claim, Malone—again, acting pro se—incorporated, as follows, all the other claims in his petition, including Ground 5 of that petition, which is the claim made as Ground 4A in this case:

> Petitioner maintains that his appellant counsel committed multiple acts of incompetence and omissions of professionalism which taken as a whole, amounted to ineffective assistance of counsel on appeal. See Grounds (1) thru (29) of this Petition and see Affidavit of Domonic MALONE attached hereto.

Id. The state district court denied Malone's petition, stating, with regard to the claim of ineffective assistance of appellate counsel, that Malone had not "set forth specific instances of ineffectiveness" in his petition. See Findings of Fact, Conclusions of Law and Order, Exh. 437, p. 7 (ECF No. 30-72, p. 8). Malone appealed, and the Nevada Supreme Court affirmed. See Order of Affirmance, Exh. 474 (ECF No. 31-35). With respect to Malone's claims of ineffective assistance of appellate counsel, the Nevada Supreme Court affirmed the denial of relief, stated only the following:

Malone further claims cumulative error regarding his trial and appellate

21

> counsel. We conclude that the district court's factual findings related to
> these claims are supported by substantial evidence and not clearly wrong
> and that Malone did not show that the district court erred in denying them
> without conducting an evidentiary hearing.

Id. at 4 (ECF No. 31-35, p. 5). This Court determines, therefore, that Malone asserted his claims of ineffective assistance of appellate counsel on his appeal to the Nevada Supreme Court, that court affirmed denial of the claims on their merits, and that Malone's claims of ineffective assistance of appellate counsel are not procedurally defaulted.

However, the Court finds meritless Malone's claim of ineffective assistance of appellate counsel for not asserting on his direct appeal the claim in Ground 4A. The prosecution argument in question was not prosecutorial misconduct as a matter of federal law, and the Nevada Supreme Court ruled that the argument did not violate state law. Malone's appellate counsel performed reasonably in not asserting the prosecutorial misconduct claim on his direct appeal, and Malone was not prejudiced by his appellate counsel for not asserting the claim. The Nevada Supreme Court therefore reasonably denied relief on the claim of ineffective assistance of appellate counsel. This Court will deny Malone habeas corpus relief on this part of Ground 8B.

Furthermore, because the ineffective effective assistance of appellate counsel claim fails, Malone does not show cause and prejudice with respect to the procedural default of the substantive prosecutorial misconduct claim in Ground 4A. The claim in Ground 4A will be denied as procedurally defaulted.

### G.    Ground 5, and the Related Part of Ground 8B

In Ground 5, Malone claims that his federal constitutional rights were violated as a result of improper jury instructions. Amended Petition for Writ of Habeas Corpus (ECF No. 11), pp. 58–67. And, in part of Ground 8B, Malone claims that his appellate counsel was ineffective for not raising this issue on his direct appeal. Id. at 85.

Malone claims that improper jury instructions "lessened the State's obligation to prove its case beyond a reasonable doubt." Id. at 58. Specifically, Malone takes issue with Jury Instructions 45, 8, 26 and 36. See Id.

Jury Instruction 45 was as follows:

> The Defendant is presumed innocent until the contrary is proved. This presumption places upon the State the burden of proving beyond a reasonable doubt every material element of the crime charged and that the Defendant is the person who committed the offense.
>
> A reasonable doubt is one based on reason. It is not mere possible doubt but is such a doubt as would govern or control a person in the more weighty affairs of life. If the minds of the jurors, after the entire comparison and consideration of all the evidence, are in such a condition that they can say they feel an abiding conviction of the truth of the charge, there is not a reasonable doubt. Doubt to be reasonable must be actual, not mere possibility or speculation.
>
> If you have a reasonable doubt as to the guilt of the Defendant, he is entitled to a verdict of not guilty.

Jury Instruction 45, Exh. 342 (ECF No 29-16, p. 51). Malone claims that this instruction undermined the constitutional requirement that all elements of the charged crimes be proven beyond a reasonable doubt, because it left undefined the phrase "material elements." See Amended Petition for Writ of Habeas Corpus (ECF No. 11), pp. 58–67.

Malone asserted this claim, regarding Jury Instruction 45, on his direct appeal. See Appellant's Opening Brief, Exh. 376, pp. 48–54 (ECF No. 30-6, pp. 58-64). The Nevada Supreme Court denied relief on the claim ruling as follows:

> Malone argues that the district court's instruction on the presumption of innocence was incorrect. We disagree.
>
> The district court has broad discretion to settle jury instructions. [Cortinas v. State, 124 Nev. 1013, 1019, 195 P.3d 315, 319 (2008)]. We review a district court's decision to approve or reject an instruction for an abuse of discretion or judicial error. Id. However, we will review whether a particular instruction is a correct statement of law de novo. Id.
>
> The district court approved a jury instruction on the presumption of innocence that placed the burden on the State of "proving beyond a reasonable doubt every material element of the crime." Malone argues that this instruction gave the jury discretion to decide which elements of the crime were "material" and was confusing, misleading, and lessened the State's burden of proof.
>
> We have previously upheld this instruction and conclude that the district court's approval of the jury instruction on the presumption of innocence was not an abuse of discretion. [Nunnery v. State, 127 Nev. 749, 785–86, 263 P.3d 235, 259–60 (2011)] (finding that the district court did not abuse its discretion by approving a presumption of innocence jury instruction that did not define the material elements of the crime).

Order of Affirmance, Exh. 385, pp. 6–7 (ECF No. 30-15, pp. 7–8) (footnote omitted). In the Nunnery case, cited in the Nevada Supreme Court's ruling on Malone's claim, the court had held as follows:

Nunnery also argues that one jury instruction was improper because it stated that the State had the burden of "proving beyond a reasonable doubt every material element of the crime charged" without specifying the elements that are material. This court has repeatedly upheld such language. See, e.g., Morales v. State, 122 Nev. 966, 971, 143 P.3d 463, 466 (2006); Crawford v. State, 121 Nev. 744, 751, 121 P.3d 582, 586 (2005); Gaxiola v. State, 121 Nev. 638, 650, 119 P.3d 1225, 1233 (2005); Leonard v. State, 114 Nev. 1196, 1209, 969 P.2d 288, 296 (1998). Therefore, the district court did not abuse its discretion in giving this instruction. See [Higgs v. State, 126 Nev. 1, 21, 222 P.3d 648, 661 (2010).]

Nunnery v. State, 127 Nev. 749, 786, 263 P.3d 235, 259–60 (2011).

As the Nevada Supreme Court ruled on the merits of Malone's claim regarding Jury Instruction 45, this part of his claim in Ground 5 is subject to the standard imposed by 28 U.S.C. § 2254(d); to prevail on the claim, Malone must show that the Nevada Supreme Court's ruling was contrary to, or involved an unreasonable application of, clearly established federal law as determined by United States Supreme Court precedent. Malone does not make such a showing.

Jury instructions must be reviewed as a whole. United States v. Park, 421 U.S. 658, 674 (1975) ("[A] single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge.") (quoting Cupp v. Naughten, 414 U.S. 141, 146–47 (1973)). In this case, the jury instructions informed the jury what elements had to be proven beyond a reasonable doubt for Malone to be convicted of each charged offense. See, e.g., Jury Instruction 2, Exh. 342 (ECF No. 29-16, p. 3) (instructing jury to consider all instructions as a whole and regard each in light of all the others); Jury Instruction 8, Exh. 342 (ECF No. 29-16, p. 14) (conspiracy); Jury Instructions 13, 16, Exh. 342 (ECF No. 29-16, pp. 19, 22) (kidnapping); Jury Instruction 14, Exh. 342 (ECF No. 29-16, p. 20) (false imprisonment); Jury Instructions 17, 18, Exh. 342 (ECF No. 29-16, pp. 23, 24) (battery); Jury Instruction 20, Exh. 342 (ECF No. 29-16, p. 26) (robbery); Jury Instructions 22, 23, Exh. 342 (ECF No. 29-16, pp. 28, 29) (pandering); Jury Instructions 24, 25, Exh. 342 (ECF No. 29-16, pp. 30, 31) (burglary); Jury Instructions 31, 34, 37, 39, Exh. 342 (ECF No. 29-16, pp. 37, 40, 43, 45) (murder). The instruction regarding reasonable doubt, Jury Instruction 45, followed immediately after the instructions stating the elements of the charged crimes. See Jury Instruction 45, Exh. 342 (ECF No. 29-16, p. 51). Looking at the jury instructions as a whole, fair-minded jurists could reasonably conclude that the jury was adequately

instructed as to what elements of each crime had to be proven beyond a reasonable doubt for Malone to be convicted, and that there was no reasonable likelihood that the jury was confused by the phrase "material elements" in Jury Instruction 45. Malone does not point to any Supreme Court precedent contrary to this conclusion. Applying 28 U.S.C. § 2254(d), the Court will deny relief on Ground 5 to the extent Ground 5 is based solely on Jury Instruction 45.

Malone's Ground 5 is also, in part, based on Jury Instructions 8, 26 and 36. See Amended Petition for Writ of Habeas Corpus (ECF No. 11), pp. 58–67. Jury Instruction 8 provided:

> A conspiracy is an agreement between two or more persons for an unlawful purpose. To be guilty of conspiracy, a defendant must intend to commit, or to aid in the commission of, the specific crime agreed to. The crime is the agreement to do something unlawful; it does not matter whether it was successful or not.

> A person who knowingly does any act to further the object of a conspiracy, or otherwise participates therein, is criminally liable as a conspirator. However, mere knowledge or approval of, or acquiescence in, the object and purpose of a conspiracy without an agreement to cooperate in achieving such object or purpose does not make one a party to conspiracy. Conspiracy is seldom susceptible of direct proof and is usually established by inference from the conduct of the parties. In particular, a conspiracy may be supported by a coordinated series of acts, in furtherance of the underlying offense, sufficient to infer the existence of an agreement.

Jury Instruction 8, Exh. 342 (ECF No. 29-16, p. 14). Jury Instruction No. 26, which concerned the crime of burglary, provided:

> The intention with which an entry was made is a question of fact which may be inferred from the defendant's conduct and all other circumstances disclosed by the evidence.

Jury Instruction 26, Exh. 342 (ECF No. 29-16, p. 32). Jury Instruction 36 provided:

> The prosecution is not required to present direct evidence of a defendant's state of mind as it existed during the commission of a crime. The jury may infer the existence of a particular state of mind of a party or a witness from the circumstances disclosed by the evidence.

Jury Instruction 36, Exh. 342 (ECF No. 29-16, p. 42).

Malone did not make any claim regarding Jury Instructions 8, 26 and 36 on his direct appeal. See Appellant's Opening Brief, Exh. 376 (ECF No. 30-6). Malone did, though, raise issues regarding those jury instructions in Ground 25 of his state habeas petition. See Petition for Writ of Habeas Corpus, Exh. 390, pp. 33–34 (ECF No. 30-23, pp. 3–4); Amended Supplemental Petition

for Writ of Habeas Corpus, Exh. 415, pp. 33–34 (ECF No. 30-49, pp. 34–35); Appellant's Informal Brief, Exh. 447 (ECF No. 31-7). On the appeal in that action, the Nevada Supreme Court ruled those claims procedurally barred, because they were not asserted on Malone's direct appeal. See Order of Affirmance, Exh. 474, p. 4 (ECF No. 31-35, p. 5). The question, then, is whether Malone can establish cause and prejudice relative to the procedural default of this part of Ground 5 by showing that his appellate counsel was ineffective for not presenting these claims on his direct appeal.

In part of Ground 8B, Malone contends that his appellate counsel was ineffective for not asserting his claims regarding Jury Instructions 8, 26 and 36 on his direct appeal. See Amended Petition for Writ of Habeas Corpus (ECF No. 11), p. 85. Malone asserted such a claim in his state habeas action. See Petition for Writ of Habeas Corpus, Exh. 390, p. 6 (ECF No. 30-20, p. 7); Amended Supplemental Petition for Writ of Habeas Corpus, Exh. 415, p. 6 (ECF No. 30-49, p. 7). The state district court denied relief on the claim. See Findings of Fact, Conclusions of Law and Order, Exh. 437 (ECF No. 30-72). On the appeal in Malone's state habeas action, the Nevada Supreme Court denied relief on that claim of ineffective assistance of appellate counsel. With respect to Jury Instructions 8, 26 and 36, and those instructions in conjunction with Jury Instruction 45, this Court determines that the Nevada Supreme Court's ruling was reasonable.

Malone argues that Jury Instructions 8, 26 and 36 violated his constitutional rights because they stated that inferences could be drawn from his actions, and from other circumstances, without repeating that the elements of the charged crimes had to be found beyond a reasonable doubt. See id. at 65. This Court finds though, that, taking the jury instructions as a whole, there is no reasonable likelihood that the jury misunderstood these instructions to indicate that they could find any element of the charged offenses upon less than the reasonable doubt standard. In essence, Jury Instructions 8, 26 and 36 simply reiterated the information provided in Jury Instructions 48 and 53, regarding the function of circumstantial evidence and regarding the jury drawing reasonable inferences from evidence. See Jury Instruction 48, Exh. 342 (ECF No. 29-16, p. 54) ("Circumstantial evidence is the proof of a chain of facts and circumstances which tend to show whether the Defendant is guilty or not guilty."); Jury Instruction 53, Exh. 342 (ECF No. 29-16, p.

54) ("You may draw reasonable inferences from the evidence which you feel are justified in the light of common experience, keeping in mind that such inferences should not be based on speculation or guess."). Malone does not cite any authority requiring that every separate jury instruction concerning the types of evidence to be considered by the jury, such as Jury Instructions 8, 26 and 36, as well as Jury Instructions 48 and 53, must reiterate the reasonable doubt standard. Again, jury instructions must be considered as a whole. Park, 421 U.S. at 674. The jury instructions in this case adequately informed the jury that each element of the charged offenses had to be proven beyond a reasonable doubt (see Jury Instruction 45, Exh. 342 (ECF No. 29-16, p. 51)), and, in this Court's view, Jury Instructions 8, 26 and 36 did not present a reasonable likelihood of confusion on that point. The Court determines Malone's claims regarding Jury Instructions 8, 26 and 36, and regarding those instructions in conjunction with Jury Instruction 45, to be without merit, and that Malone's appellate counsel did not perform unreasonably in not asserting those claims on his direct appeal. The Court also determines that Malone was not prejudiced by this appellate counsel not asserting these claims. The Court will deny Malone relief on this part of Ground 8B.

Because Malone does not show that his appellate counsel was ineffective for not asserting, on his direct appeal, his claims regarding Jury Instructions 8, 26 and 36, and regarding those instructions in conjunction with Jury Instruction 45, Malone does not establish cause and prejudice relative to the procedural default of those claims. The Court will deny Malone habeas corpus relief on those substantive claims on the ground that they are procedurally defaulted.

**H.    Ground 6, and the Related Part of Ground 8B**

In Ground 6, Malone claims that his federal constitutional rights were violated because his first-degree kidnapping conviction, for kidnapping Melissa Estores, was not supported by sufficient evidence. Amended Petition for Writ of Habeas Corpus (ECF No. 11), pp. 67–71. And, in part of Ground 8B, Malone claims that his appellate counsel was ineffective for not asserting this claim on his direct appeal. Id. at 86.

Under Nevada law, first-degree kidnapping is kidnapping with one of several particular specific intents, including "the purpose of killing the person or inflicting substantial bodily harm."

See NRS 200.310(1). Second-degree kidnapping is, essentially, any other kidnapping. See NRS 200.310(2).

The jury was instructed that Malone was charged, in Count 3, with first-degree kidnapping, for kidnapping Estores "for the purpose of inflicting substantial bodily harm." See Jury Instruction 43, Exh. 342 (ECF No. 29-16, p. 4); see also Third Amended Information, Exh. 340, p. 2 (ECF No. 29-14, p. 3). No other specific intent for the first-degree kidnapping was alleged. Malone was also charged, in Count 4, with battery with substantial bodily harm, for battery upon Estores on the same occasion. See Jury Instruction 43, Exh. 342 (ECF No. 29-16, pp. 4–5); see also Third Amended Information, Exh. 340, pp. 2–3 (ECF No. 29-14, p. 3–4). The jury found Malone guilty of first-degree kidnapping on Count 3. See Verdict, Exh. 344 (ECF No. 29-20). However, on Count 4, the jury found Malone guilty of the lesser included offense of battery without substantial bodily harm. Id.

Malone's argument, that the jury's verdict, finding him guilty of first-degree kidnapping for the kidnapping of Estores, was not supported by sufficient evidence, is as follows:

> The argument here is simple. The jury found that Mr. Malone did not inflict substantial bodily harm under Count 4, yet they simultaneously found that he did commit first-degree kidnapping, an offense which requires intent to commit substantial bodily harm, under Count 3. These are contradictory to each other. The finding under Count 4 logically precludes the finding under Count [3].

Amended Petition for Writ of Habeas Corpus (ECF No. 11), pp. 69–70.

Malone did not assert this claim on his direct appeal. See Appellant's Opening Brief, Exh. 376 (ECF No. 30-6). Malone did, however, include this claim, as Ground 18, in his state habeas petition. See Petition for Writ of Habeas Corpus, Exh. 390, p. 24 (ECF No. 30-22, p. 4); Amended Supplemental Petition for Writ of Habeas Corpus, Exh. 415, p. 24 (ECF No. 30-49, p. 25); Appellant's Informal Brief, Exh. 447 (ECF No. 31-7). On the appeal in that action, the Nevada Supreme Court ruled the claim procedurally barred because it was not asserted on Malone's direct appeal. See Order of Affirmance, Exh. 474, p. 4 (ECF No. 31-35, p. 5). Here, then, the claim is subject to dismissal as procedurally defaulted unless Malone can establish cause and prejudice

28

1    relative to the procedural default by showing that his appellate counsel was ineffective for not

2    presenting the claim on his direct appeal.

3        The Court rejects Malone's argument that the jury's verdicts on Counts 3 and 4 were

4    inconsistent. To be guilty of first-degree kidnapping, the jury had to find that Malone <u>intended</u> to

5    inflict substantial bodily harm when he kidnapped Estores. <u>See</u> NRS 200.310(1). The jury did not

6    have to find that Malone did in fact inflict substantial bodily harm. <u>See</u> <u>id</u>. The jury could have

7    found that Malone intended to inflict substantial bodily harm, but did not do so, perhaps because

8    his co-defendant intervened and convinced him to stop before the battery reached that point.

9        Moreover—and most importantly—consistency of the jury's findings is not the test of the

10   sufficiency of the evidence. The Due Process Clause of the United States Constitution "protects

11   the accused against conviction except upon proof beyond a reasonable doubt of every fact

12   necessary to constitute the crime with which he is charged." <u>In re Winship</u>, 397 U.S. 358, 364

13   (1970). On a claim of insufficient evidence, "the relevant question is whether, after viewing the

14   evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found

15   the essential elements of the crime beyond a reasonable doubt." <u>Jackson v. Virginia</u>, 443 U.S. 307,

16   319 (1979) (emphasis in original); <u>see also</u> <u>Payne v. Borg</u>, 982 F.2d 335, 338 (9th Cir. 1992).

17   "[F]aced with a record of historical facts that supports conflicting inferences," the court "must

18   presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any

19   such conflicts in favor of the prosecution, and must defer to that resolution." <u>Jackson</u>, 443 U.S. at

20   326; <u>see also</u> <u>McDaniel v. Brown</u>, 558 U.S. 120, 133 (2010) (reaffirming <u>Jackson</u> standard). The

21   Supreme Court has emphasized that claims of insufficiency of the evidence "face a high bar in

22   federal habeas proceedings. . . ." <u>Coleman v. Johnson</u>, 566 U.S. 650, 651 (2012) (per curiam).

23       Applying the <u>Jackson</u> analysis, the Court finds that there was ample evidence presented at

24   trial to support the verdict of guilty on Count 3, for the first-degree kidnapping of Estores. Estores

25   testified extensively at trial. <u>See</u> Trial Transcript, January 17, 2012, Exh. 327, pp. 64–243 (ECF

26   No. 28-14, p. 20 – ECF No. 28-17, p. 21); Trial Transcript, January 18, 2012, Exh. 328, pp. 2–239

27   (ECF No. 28-18, p. 3 – ECF No. 28-21, p. 48). She testified that Malone was angry at her because

28   she was in a relationship with another man and did not want to be Malone's girlfriend. <u>See</u> Trial

Transcript, January 17, 2012, Exh. 327, pp. 124–26 (ECF No. 28-15, pp. 25–27). She testified about being badly beaten by Malone only a few weeks before the kidnapping, as an example of "PT," which apparently meant "pimp training time," or "prayer time." See Trial Transcript, January 17, 2012, Exh. 327, pp. 78–89 (ECF No. 28-14, pp. 34–45); see also Trial Transcript, January 19, 2012, Exh. 329, p. 12 (ECF No. 28-23, p. 13) (Witness Sarah Matthews saw Estores with visible injuries in May of 2006.). Estores testified that during the incident found to be first-degree kidnapping, Malone repeatedly struck her with his fists and kicked her, at one point even standing on her head with one foot and kicking her in the head with the other. See Trial Transcript, January 17, 2012, Exh. 327, pp. 132–34 (ECF No. 28-15, pp. 33–35). During that beating, Malone made a comment about Estores' relationship with another man. See Id. at 132 (ECF No. 28-15, p. 33). The beating ended after another individual told Malone that "it was enough." Id. at 134 (ECF No. 28-15, p. 35). Viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found that Malone kidnapped Estores with the intention of inflicting substantial bodily harm on her.

Because the Court finds meritless Malone's claim of insufficiency of the evidence to support the first-degree kidnapping charge, the Court finds, in turn, that Malone's appellate counsel did not perform unreasonably in not asserting the claim on his direct appeal, and that Malone was not prejudiced by this appellate counsel not asserting the claim. The Court will deny Malone relief on this part of Ground 8B.

And, because Malone does not show that his appellate counsel was ineffective for not asserting, on his direct appeal, the claim of insufficiency of the evidence in Ground 6, Malone does not establish cause and prejudice relative to the procedural default of that claim. The Court will deny Malone habeas corpus relief on Ground 6 on the ground that the claim is procedurally defaulted.

**I.      Ground 7, and the Related Part of Ground 8B**

In Ground 7, Malone claims that his federal constitutional rights were violated because the trial court allowed the testimony of an accomplice and improperly instructed the jury about how

to weigh the accomplice testimony. Amended Petition for Writ of Habeas Corpus (ECF No. 11), pp. 71–82. Malone claims:

> At trial, the main evidence against Mr. Malone was the testimony of Donald Herb, who was involved in the murders. Mr. Herb testified that Mr. Malone was also involved in the murders, in exchange for a plea deal to one accessory charge and the State's agreement not to argue for any prison sentence. The trial court erred in allowing this testimony to come in and further erred in incorrectly instructing the jury about how to weigh it, thus violating Mr. Malone's rights under the Fifth and Fourteenth Amendments.

Id. at 71–72; see also Trial Transcript, January 23, 2012, Exh. 331, pp. 2–190 (ECF No. 28-32, p. 3 – ECF No. 28-34, p. 57) (Herb's testimony). In part of Ground 8B, Malone claims that his appellate counsel was ineffective for not asserting this claim on his direct appeal. Amended Petition for Writ of Habeas Corpus (ECF No. 11), p. 85.

Malone did not assert the claim in Ground 7 on his direct appeal. See Appellant's Opening Brief, Exh. 376 (ECF No. 30-6). Reading his pro se state habeas petition liberally, it appears that Malone did include this claim in Grounds 19 and 25 of his state habeas petition. See Petition for Writ of Habeas Corpus, Exh. 390, pp. 25–26, 33–34 (ECF No. 30-22, pp. 5–6; ECF No. 20-23, pp. 3–4); Amended Supplemental Petition for Writ of Habeas Corpus, Exh. 415, pp. 25–26, 33–34 (ECF No. 30-49, pp. 26–27, 34–35); Supplemental Memorandum of Points and Authorities, Exh. 429, p. 3 (ECF No. 30-64, p. 4); Appellant's Informal Brief, Exh. 447 (ECF No. 31-7). On the appeal in that action, the Nevada Supreme Court ruled the claim procedurally barred because it was not asserted on Malone's direct appeal. See Order of Affirmance, Exh. 474, p. 4 (ECF No. 31-35, p. 5). Therefore, the claim is procedurally defaulted in this case, unless Malone can establish cause and prejudice relative to the procedural default by showing that his appellate counsel was ineffective for not asserting the claim on his direct appeal.

A Nevada statute provides:

> A conviction shall not be had on the testimony of an accomplice unless the accomplice is corroborated by other evidence which in itself, and without the aid of the testimony of the accomplice, tends to connect the defendant with the commission of the offense; and the corroboration shall not be sufficient if it merely shows the commission of the offense or the circumstances thereof.

NRS 175.291(1). Malone acknowledges, as follows, that errors of state law are not actionable on federal habeas review, and that, therefore, for relief to be warranted on this claim, he must show a violation of federal law:

> Nevada's accomplice corroboration law is a state statute. Therefore, in order to obtain habeas relief, either the testimony must be "incredible or insubstantial on its face," or else the trial court's violation of the statute must deny the due process right to fundamental fairness by arbitrarily depriving the defendant of a state law entitlement. Laboa v. Calderon, 224 F.3d 972, 979 (9th Cir. 2000). Erroneous admission of accomplice testimony is reviewed for harmless error. Id. at 980.

Amended Petition for Writ of Habeas Corpus (ECF No. 11), p. 73.

Federal constitutional law generally does not require corroboration of an accomplice's testimony. See Nolen v. Wilson, 372 F.2d 15, 17–18 (9th Cir.), cert. denied 387 U.S. 948 (1967). In the Laboa case, cited by Malone in the quoted part of his claim, above, the Court of Appeals stated the following regarding a claim similar to Malone's in a federal habeas case:

> California Penal Code section 1111 provides that a "conviction cannot be had upon the testimony of an accomplice unless it be corroborated by such other evidence as shall tend to connect the defendant with the commission of the offense." Cal.Penal Code § 1111. Contrary to petitioner's argument, however, section 1111 "does not render uncorroborated accomplice testimony inadmissible." In re Mitchell P., 22 Cal.3d 946, 151 Cal.Rptr. 330, 587 P.2d 1144, 1147 n.2 (1978); see also People v. Bowley, 59 Cal.2d 855, 31 Cal.Rptr. 471, 382 P.2d 591, 593 (1963) ("The fact that a witness is an accomplice does not affect the admissibility or competency of his testimony; it goes only to its weight and credibility."); In re R.C., 39 Cal.App.3d 887, 114 Cal.Rptr. 735, 738 (1974); People v. Santos, 134 Cal.App. 736, 26 P.2d 522, 526 (1933). Rather, section 1111 is a state law requirement that a conviction be based on more than uncorroborated accomplice testimony.
>
> *   *   *
>
> Section 1111 does, however, prevent convictions based on only uncorroborated accomplice testimony. As a state statutory rule, and to the extent that the uncorroborated testimony is not "incredible or insubstantial on its face," the rule is not required by the Constitution or federal law. United States v. Necoechea, 986 F.2d 1273, 1282 (9th Cir. 1993) ("The uncorroborated testimony of an accomplice is enough to sustain a conviction unless it is incredible or insubstantial on its face."); United States v. Lai, 944 F.2d 1434, 1440 (9th Cir.1991); United States v. Lopez, 803 F.2d 969, 973 (9th Cir. 1986); Harrington v. Nix, 983 F.2d 872, 874 (8th Cir. 1993) ("[S]tate laws requiring corroboration do not implicate constitutional concerns that can be addressed on habeas review."). Because [the testimony at issue] was neither incredible nor insubstantial on its face, and because section 1111 is a state rule, habeas will lie for Laboa only if the alleged violation of section 1111 denied Laboa his due process right to fundamental fairness. See Estelle v. McGuire, 502 U.S. 62, 72–73, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991).

32

A State violates a criminal defendant's due process right to fundamental fairness if it arbitrarily deprives the defendant of a state law entitlement. See Hicks v. Oklahoma, 447 U.S. 343, 346, 100 S.Ct. 2227, 65 L.Ed.2d 175 (1980). No such arbitrary denial occurred here. The corroborative evidence required by section 1111 "need not corroborate every fact to which the accomplice testified or establish the corpus delicti, but is sufficient if it tends to connect the defendant with the crime in such a way as to satisfy the jury that the accomplice is telling the truth." People v. Fauber, 2 Cal.4th 792, 9 Cal.Rptr.2d 24, 831 P.2d 249, 273 (1992).

Laboa, 224 F.3d at 979.

Respondents argue that Herb was not an accomplice within the meaning of NRS 175.291(2). See Answer (ECF No. 51, p. 42). The Court need not rule on that question. For purposes of this analysis, the Court assumes that Herb was Malone's accomplice.

The Court, though, finds without merit Malone's claim that Herb's testimony was inadmissible. Malone cites no authority—state law or federal—supporting the proposition that NRS 175.291 governs the admissibility of evidence. See Laboa, 224 F.3d at 979 ("Contrary to petitioner's argument, however, section 1111 [the California statute analogous to NRS 175.291(1)] does not render uncorroborated accomplice testimony inadmissible." (internal quotation marks omitted)). The admission of Herb's testimony did not violate NRS 175.291(1).

Furthermore, under state law, Malone's convictions are not undermined, under NRS 175.291, by a lack of corroborating evidence. Under Nevada law, evidence corroborating accomplice testimony "need not in itself be sufficient to establish guilt, and it will satisfy [NRS 175.291(1)] if it merely tends to connect the accused to the offense." Cheatham v. State, 104 Nev. 500, 504–05, 761 P.2d 419, 422 (1988) (emphasis added). "Corroboration evidence need not be found in a single fact or circumstance and can, instead, be taken from the circumstances and evidence as a whole." Cheatham, 104 Nev. at 504, 761 P.2d at 422. There was strong corroboration of Herb's testimony.

Witness Nicolin Broderway testified that around the time of the disappearance of Combado and Magee, she spoke with Jason McCarty, who was with Malone in a car at the time, and McCarty made threatening remarks about Combado and Magee. See Trial Transcript, January 19, 2012, Exh. 329, pp. 133–38, 192–93 (ECF No. 28-25, pp. 18–23; ECF No. 28-26, pp. 15–16).

Witness Ryan Noe testified that he was with McCarty a few days prior to the disappearance of Combado and Magee, and McCarty made threatening comments about Magee; Noe also

testified that he had referred to Malone as McCarty's "enforcer." Trial Transcript, January 20, 2012, Exh. 330, pp. 21–26 (ECF No. 28-28, pp. 22–27); see also id. at 74 (ECF No. 28-29, p. 6) ("You know, [he was] like a foreman to a construction company. You know, basically, he would collect money. You know, basically take care of business if something needed to be taken care of.").

Witness Correna Phillips testified about a conversation between Malone and McCarty about two days before the killings, discussing their intent to punish the victims—to take them into the desert for "PT time"—and she testified that, subsequently, on the night of the killings, Malone and McCarty were angry because they didn't know where the victims were, and they owed Malone and McCarty money. See Trial Transcript, January 26, 2012, Exh. 335, pp. 19–26 (ECF No. 29-4, pp. 20–27).

Witness Sarah Matthews testified that on the evening of the killings she saw Malone and McCarty arrive at an apartment building where Combado and Magee were located, and she heard them say that Combado and Magee owed them money. See Trial Transcript, January 19, 2012, Exh. 329, pp. 15–24, 73–74 (ECF No. 28-23, pp. 16–25; ECF No. 28-24, pp. 11–12). Matthews testified that they had a golf club. See id. Matthews testified that Malone and McCarty went to the apartment where Combado and Magee were, and then she saw them walk Combado and Magee out of that apartment and down a passageway in the building, holding their arms, the two women crying, and Malone carrying the golf club. See id. This corroborated Herb's testimony that he heard comments by Malone and McCarty over the telephone, during the murders, suggesting that they used a golf club in committing one or both of the murders, and that, afterwards, Malone and McCarty discarded parts of a broken golf club at another location. See Trial Transcript, January 23, 2012, Exh. 331, pp. 31–40 (ECF No. 28-32, pp. 32–41). Witnesses Jennie Ayers and Gerard Collins testified about finding golf club parts, and other evidence, where Herb testified it was discarded. See Trial Transcript, January 24, 2012, Exh. 332, pp. 163–84 (ECF No. 28-47, p. 6 – ECF No. 28-48, p. 14); Trial Transcript, January 26, 2012, Exh. 335, pp. 159–60 (ECF No. 29-6, pp. 28–29). Testimony of Dr. Piotr Kubiczek, who did the autopsies, and Erin Reat, who did DNA testing on the parts of the golf club found by the police, tied the broken golf club to the murders.

See Trial Transcript, January 19, 2012, Exh. 329, pp. 223–24 (ECF No. 28-26, pp. 46–47); Trial Transcript, January 27, 2012, Exh. 338, pp. 56–64 (ECF No. 29-9, p. 57 – ECF No. 29-10, p. 7).

Phillips testified that about two days after the victims were killed, McCarty, with Malone present, asked her to go to a tire shop and have the tires changed on the car that they used on the night of the killings, and she attempted to do so but was unsuccessful. See Trial Transcript, January 26, 2012, Exh. 335, pp. 32–36 (ECF No. 29-4, pp. 33–37).

Witness Robert Griffin, testified about security camera video from a gas station that corroborated Herb's testimony regarding his whereabouts on the night of the murders. See Trial Transcript, January 24, 2012, Exh. 332, pp. 33–41 (ECF No. 28-37, p. 7 – ECF No. 28-38, p. 3).

Perhaps most directly corroborative of Herb's testimony, witness Gerard Collins testified about cell phone data relative to Herb's telephone—data that showed the location of his telephone at specific times when it was in use on the night of the murders—and that testimony was consistent with Herb's testimony about his actions, and observations, and communications with Malone and McCarty that night. See Trial Transcript, January 27, 2012, Exh. 338, pp. 98–107 (ECF No. 29-10, pp. 41–50); see also Trial Transcript, January 31, 2012, Exh. 343, pp. 44–47 (ECF No. 29-17, pp. 45–48) (prosecutor's argument in closing that this evidence corroborated Herb's testimony).

These are just some of the more concrete examples of trial testimony of other witnesses corroborating Herb's testimony; in fact, there was more. In short, the evidence against Malone was overwhelming, and it was generally consistent with, and corroborative of, Herb's testimony.

Regarding the federal constitutional aspect of Malone's claim, Herb's testimony, while extremely inculpatory with respect to Malone, was not incredible or insubstantial, and it did not render Malone's trial fundamentally unfair, especially when considered in the context of all the evidence at the trial. See Trial Transcript, January 23, 2012, Exh. 331, pp. 2–190 (ECF No. 28-32, p. 3 – ECF No. 28-34, p. 57) (Herb's testimony).

Malone goes on in Ground 7 to argue that the trial court violated his federal constitutional rights by not properly instructing the jury regarding their consideration of accomplice testimony. The instruction given the jury regarding consideration of accomplice testimony was as follows:

An accomplice is one who is subject to prosecution for the identical offense charged against the defendant on trial.

To be an accomplice, the person must have aided, promoted, encouraged, or instigated by act or advice the commission of such offense with knowledge of the unlawful purpose of the person who committed the offense.

A defendant cannot be found guilty based upon the testimony of an accomplice unless such testimony is corroborated by other evidence which tends to connect such defendant with the commission of the offense.

It is not necessary that the evidence of the corroboration be sufficient in itself to establish every element of the offense charged, or that it corroborate every fact to which the accomplice testifies. The necessary corroboration of an accomplice's testimony need not be found in a single fact or circumstance; rather, several circumstances in combination may satisfy the law. If evidence from sources other than the testimony of the accomplice tends on the whole to connect the accused with the crime charged, the accomplice's testimony is lawfully corroborated.

Jury Instruction 49, Exh. 342 (ECF No. 29-16, p. 55).

As the Court understands Malone's theory here, it is that the instruction was improper because it did not contain the statement that "[i]f there is no independent, inculpatory evidence—evidence tending to connect the defendant with the offense, there is no corroboration, though the accomplice may be corroborated in regard to any number of facts sworn to [by] him." Amended Petition for Writ of Habeas Corpus (ECF No. 11), p. 77; see also id. at 80–81 ("The court left out binding language instructing the jury that 'evidence tending to connect the defendant with the offense' is not equivalent to corroboration of 'any number of facts sworn' to [by] the accomplice."). The Court finds this argument to be without merit. Malone cites no authority requiring the language he suggests should have been included in the instruction. Moreover, in the context of this case, there is no possibility that the jury was confused and misapplied NRS 175.291; there was ample, indeed overwhelming, evidence tending to connect Malone to the murders.

Because the Court finds meritless Malone's claims that his conviction was in violation of NRS 175.291, or that his trial was rendered unfair by Herb's testimony and/or the jury instruction regarding accomplice testimony, the Court determines that Malone's appellate counsel did not perform unreasonably in not asserting these claims on his direct appeal, and that Malone was not prejudiced by this appellate counsel not doing so. The Court will deny Malone relief on this claim of ineffective assistance of appellate counsel in Ground 8B.

1  And, because Malone does not show that his appellate counsel was ineffective for not
2  asserting the claims in Ground 7 on his direct appeal, he does not establish cause and prejudice
3  relative to the procedural default of those claims. The Court will deny Malone habeas corpus relief
4  on Ground 7 on the ground that the claims in Ground 7 are procedurally defaulted.

5  **J.      Ground 8A**

6  In Ground 8A, Malone claims that his federal constitutional rights were violated as a result
7  of ineffective assistance of his trial counsel, because of the cumulative effect of trial counsel's
8  errors. Amended Petition for Writ of Habeas Corpus (ECF No. 11), pp. 82–84. This claim fails
9  because the Court finds there to have been no ineffective assistance of trial counsel to be
10 considered cumulatively. The Court will deny Malone habeas corpus relief on Ground 8A.

11
12 **K.      Ground 8B**

13 In Ground 8B, Malone claims that his federal constitutional rights were violated as a result
14 of ineffective assistance of his appellate counsel. Amended Petition for Writ of Habeas Corpus
15 (ECF No. 11), pp. 82, 84–88. As is explained above, however, in connection with the particular
16 claims Malone believes his appellate counsel should have raised on his direct appeal, the Court
17 finds that he did not receive ineffective assistance of appellate counsel. The Court will deny
18 Malone habeas corpus relief on Ground 8B.

19 **L.      Certificate of Appealability**

20 The standard for the issuance of a certificate of appealability requires a "substantial
21 showing of the denial of a constitutional right." 28 U.S.C. §2253(c). The Supreme Court has
22 interpreted § 2253(c) as follows:

23     Where a district court has rejected the constitutional claims on the merits,
24     the showing required to satisfy § 2253(c) is straightforward: The petitioner must
       demonstrate that reasonable jurists would find the district court's assessment of the
25     constitutional claims debatable or wrong.

26 Slack v. McDaniel, 529 U.S. 473, 484 (2000); see also James v. Giles, 221 F.3d 1074, 1077–79
27 (9th Cir. 2000). Applying the standard articulated in Slack, the Court finds that a certificate of
28 appealability is unwarranted with respect to the claims on which the Court denies relief.

1    **IV.     CONCLUSION**

2         **IT IS THEREFORE ORDERED** that Petitioner's Amended Petition for Writ of Habeas

3    Corpus (ECF No. 11) is **GRANTED IN PART AND DENIED IN PART**. Petitioner is granted

4    relief on his claim in Ground 1 of his amended habeas petition. Petitioner is denied relief on all

5    other claims in his amended habeas petition.

6         **IT IS FURTHER ORDERED** that Petitioner Domonic Ronaldo Malone shall be released

7    from custody within 60 days, unless Respondents file in this action, within that 60-day period, a

8    written notice of the State's election to retry Malone, and the State thereafter, within 180 days after

9    the filing of that notice, commences jury selection in the retrial. Any party may request from this

10   Court a reasonable modification of these time limits.

11        **IT IS FURTHER ORDERED** that the judgment in this action shall be stayed pending the

12   conclusion of any appellate or certiorari review in the Ninth Circuit Court of Appeals or the United

13   States Supreme Court, or the expiration of the time for seeking such appellate or certiorari review,

14   whichever occurs later.

15        **IT IS FURTHER ORDERED** that Petitioner is denied a certificate of appealability with

16   respect to all claims on which the Court denies relief.

17        **IT IS FURTHER ORDERED** that Petitioner's pro se Motion to Grant Relief/or Release

18   Based on COVID 19 Hardship Act (ECF No. 55) is **DENIED**. Petitioner is represented by counsel;

19   any such motion must be filed by counsel. See LR IA 11-6.

20        **IT IS FURTHER ORDERED** that the Clerk of the Court is directed to enter judgment

21   accordingly.

22

23        DATED: September 30, 2022.

24

25   _____

26   RICHARD F. BOULWARE, II
     UNITED STATES DISTRICT JUDGE

27

28